# Exhibit A

Daniel M. Baczynski, Bar No. 15530
BACZYNSKI LAW, PLLC
136 W, 12300 S, Ste B
Draper, UT 84020
Phone: (708) 715-2234
*dan@bskilaw.com*

Roger A. Kraft, Bar No. 9932
7660 S. Holden St.
Midvale, UT. 84047
801-255-8550
roger@rogerkraftlaw.com
Attorneys for Plaintiff

---

### THIRD JUDICIAL DISTRICT COURT
### STATE OF UTAH, SLC DEPARTMENT

| | |
|---|---|
| Sheri Meyer, <br><br>     Plaintiff, <br><br> vs. <br><br> West Jordan Officers Nolan Butler, Ericka Wood, Sherri Wright, E. Taylor, Nicholas Dalami, and West Jordan City <br><br>     Defendants. | **COMPLAINT AND JURY DEMAND** <br><br><br> Case No: <br><br><br> Judge: |

---

## <u>INTRODUCTION</u>

"Physical entry of a home, even if only with one foot on the threshold, is an entry of the home for constitutional purposes. Absent concerns for officer safety or other exigent circumstances, such an entry generally requires a warrant."

*Dalcour v. City of Lakewood*, 492 F. App'x 924, 932–33 (10th Cir. 2012).

1

Ten years ago, the Tenth Circuit made it clear that police officers cannot stick a foot in the entryway to prevent a homeowner from closing the door and ending a warrantless investigation. The lesson, however, has not been learned by Defendants and the West Jordan City Police. While investigating a noise complaint at the MyPlace Hotel, Defendants stuck a foot into Plaintiff's hotel room doorway, barring a naked Sheri Meyer from putting on clothes in private before answering the officers' questions. Angered by her insistence that they comply with the Constitution, Defendants barged into the room, handcuffed Meyer, and conducted a warrantless search. It yielded no evidence of a crime.

Defendants' affront to the Constitution did not end there, as they quickly realized their potential liability. Needing some explanation for their actions, Defendants concocted a fake charge. They falsely claimed Meyer threw a punch and assaulted a police officer – a claim clearly dispelled by their body camera footage. Defendants dragged Sheri outside (still without pants or underwear) and forced her into a full body restraint on the hotel lawn for everyone to see. They ignored her pleas that the restraint was too tight, causing Sheri to pass out and lose consciousness during the drive to the county jail. She spent time in jail, was prosecuted, but ultimately prevailed with all charges dropped.

At every step of their investigation, Defendants exceeded the constitutional protections afforded to us Americans. Even when they recognized their actions went too far, Defendants doubled down – committing unlawful arrest, using excessive force, and

drafting false police reports – all in the hopes of limiting their liability. To date, West Jordan City has refused to discipline its officers or even acknowledge the wrongness of their actions. Consequently, the burden falls on Sheri to educate these officers (and the City) on the bounds imposed by the constitution so that this harm does not befall anyone else.

## JURISDICTION AND VENUE

1.  This Court has jurisdiction over all civil matters occurring in the State of Utah pursuant to Utah Code § 78A-5-102(1).

2.  Venue is proper because the cause of action arose in Salt Lake County, State of Utah.

3.  Defendants are subject to personal jurisdiction within the State of Utah.

## PARTIES

4.  Sheri Meyer, at all times pertinent, is and has been a resident of the State of Utah.

5.  Defendant Officer Nolan Butler was at all times relevant an employee of the West Jordan City Police Department.

6.  Defendant Officer Sherri Wright was at all times relevant an employee of the West Jordan City Police Department.

7.  Defendant Officer E Taylor was at all times relevant an employee of the West Jordan City Police Department.

8.  Defendant Officer Ericka Wood was at all times relevant an employee of the West Jordan City Police Department.

3

9.     Defendant Officer Nicholas Dailami was at all times relevant an employee of the West Jordan City Police Department.

10.    West Jordan City is a political subdivision of Utah located in Salt Lake County.

11.    Defendants are persons under the meaning of 42 U.S.C. § 1983 and are located in this judicial district.

## **GENERAL ALLEGATIONS**

*West Jordan Police visit Sheri at her Hotel to Investigate a Noise Complaint*

12. Sheri Meyer is an employed, married woman with children.

13. On September 26th, 2022, Meyer checked into the MyPlace Hotel in West Jordan with her dog.

14. Meyer did not have any visitors that night and went to bed several hours before her interaction with the West Jordan Police Department.

15. Sometime around 3:50 am on September 27th, 2022, Mr. Hebden, a fellow guest at the MyPlace Hotel, called 911 to complain that people in the neighboring room (and possibly a child) have been yelling and screaming at each other since around 10 PM.

16. Officers Butler, Wright, Taylor, and Wood were dispatched to the MyPlace Hotel and arrived at 4 AM.

17. The officers went up the elevator and proceeded directly to Room 404 – Sheri Meyer's room.

18. The room was quiet on their arrival.

4

19. Officer Butler knocked on the door and Sheri's dog began to bark.

20. Sheri's dog woke her up. She did not hear the officers knocking.

21. The officers could hear Sheri's voice comforting the dog and trying to coax it to be quiet.

22. The officers continued to knock until Sheri appeared at the door wearing only a shirt.

*West Jordan Police enter Sheri's Room without a Warrant
to keep Her from Closing the Door*

23. Upon opening the door, a half-naked Sheri told the officers "Let me put some pants on".

24. When Sheri tried to close the door, Officers Wood and Butler stuck their foot in the doorway to block its closure.

25. Defendants did not have a warrant to enter Sheri's room. There were no exigent circumstances justifying a warrantless entry into Sheri's room.

26. Officer Butler said, "Just leave the door open".

27. Sheri asked why the officers were present.

28. The officers wanted to know if anyone else was in the room. Sheri explained it was just her and her dog.

29. Sheri then inquired if she "could please shut the door and put some pants on".

30. Officer Butler said, "Let me finish explaining".

31. The officers told Sheri there had been complaints of yelling.

5

32. Sheri again explained she was the only one in the room and asked if she could "Please shut the door and put some pants on".

33. Officer Butler said, "Once we are done talking we can figure that out".

34. The officers maintained a foot in the entranceway to keep Sheri from closing the door. Sheri again requested "Please take your foot out of the way. Please do that".

35. Sheri, trying to keep her naked lower half behind covered, tried to close the door but could not.

36. Another officer then demanded that Sheri "step out of the apartment".

37. Sheri, who is married to a former law enforcement officer, said "No. I don't have to. You don't have a warrant".

38. Sheri opened the door to show the officers there was no one else in her room. The officers still insisted that they investigate the room.

*Sheri tells the Officers to Close the "Fucking Door";*
*the Officers Unlawfully Enter and Search her Room*

39. The conversation was getting heated. Sheri told the officers she does not have to cooperate because they do not have a warrant. The officers continued to insist Sheri answer their questions.

40. Finally, Sheri told the officer to get her "foot out the fucking door, now" and then pointed her finger at the officer saying, "You don't have a warrant".

6

41. Sheri's finger did not come close to contact with any officers. The officers later falsely described this gesture as Sheri "throwing a punch".

42. The officers then all entered Sheri's room, grabbed Sheri, put her hands behind her back, and handcuffed Sheri.

43. Sheri asked to put her pants on. An officer responded that "we are past that point right now".

44. Sheri was handcuffed, mostly naked, and forced onto her bed by a male and female officer. While the female office stood to the side of Sheri, it was the male officer that continued to stand directly in front of Sheri's naked half-naked body.

45. Sheri was very afraid and very angry and threatened the officers with a lawsuit.

46. The officers searched Sheri's room and found it empty.

47. Even after verifying there were no other persons in the room, and Sheri telling them "You're knocking on the wrong fucking door," officers continued to detain Sheri in handcuffs and continued to escalate the situation, never allowing her or even assisting her in covering her naked body.

48. There is no body cam footage or other evidence to suggest officers ever contacted the original complainant to corroborate or verify which room the noises were coming from prior to their entry.

7

*The Officers make up Charges to Justify their Search, Detention, and Arrest*

49. The officers realized they had no legal justification for their actions and were worried about Sheri's threats of litigation.

50. The officers promptly called for their supervisor Nicholas Dailami.

51. Officer Butler and Taylor then turned off the audio on their body cameras, left the room, and had a two-minute discussion outside.

52. By turning off the audio, Officers Butler and Taylor violated West Jordan Police Policy on Body Cameras which bars the cessation of recording for all but "significant periods of inactivity… from direct participation in the incident".

53. Upon information and belief, Officer Butler and Taylor concocted grounds to justify their entry, search, and detention – that Sheri assaulted Officer Woods at the door.

54. Before this conversation, not a single officer mentioned an alleged assault or accused Sheri of throwing a punch.

55. After the two officers returned to the room, Officer Butler told Sheri she is going to jail.

56. The officers wrapped Sheri in a bedsheet and lead her outside the hotel.

57. The officers left Sheri's dog (a brown dachshund named Riley) at the hotel. The officers later enlisted hotel staff to "scare the dog out of the room". The officers then

grabbed and transported Riley to the animal shelter even though Sheri told the officers her husband would come take the dog.

58. At this point, Sheri still had not been told the justification for her arrest and demanded answers.

59. Instead, the officers searched her bra for contraband.

60. Once outside, Officer Taylor met with Officer Dailami and again had a discussion with his audio turned off.

61. Upon information and belief, Officer Taylor explained their situation to Officer Dailami and Officer Dailami elected not to intervene.

62. Instead, Officer Dailami authorized the officers to put Sheri in a WRAP body suit.

*The Officers needlessly Subject Sheri to a Full Body Restraint,*
*causing Sheri to Pass Out at least Two Times.*

63. When Sheri asked about the device, Officer Butler responded it was a "cool little restraint device".

64. This is what a WRAP body suit looks like:



65. The officers laid the device on the grass outside the hotel, then had the butt-naked Sheri lay down on top of it as three officers tied the restraints.

66. While tightening the restraints, Sheri repeatedly told the officers they were hurting her.

67. The officers shoved Sheri into their patrol car at 4:40 am.

68. While Sheri was in the car, the officers repeatedly lied to her, falsely claiming they had her husband on the phone to try and gather her personal information.

69. Even after she evoked her right to counsel, the officers continued to keep Sheri in the patrol car and pepper her with questions.

70. Sheri told the officers the restraints were causing her pain.

10

71. The officers tried to adjust the restraints, but she continued to complain of pain and trouble breathing.

72. At 5 am, during transport to jail, the officers realized Sheri had passed out. Sheri was unresponsive to touch.

73. The officers called EMS and loosened her restraints.

74. Sheri returned to consciousness and began crying.

75. While driving Sheri passed out at least one more time.

76. The Officers finally arrived at the Salt Lake County Jail at roughly 5:30 AM.

77. Sheri was left in the WRAP device while she waited to be processed at the Jail.

78. Sheri was incarcerated for a few hours and let out on bail.

79. She left the Jail with bruises from the WRAP device.

*The Officers included False Statements in their Police Reports,*
*causing Sheri to hire Counsel to Defend and Beat Baseless Charges*

80. The officers charged Sheri with three counts of Assault by Prisoner (3rd Degree Felony), one count Assault on Peace Officer (Class A Misdemeanor), and one count Interference with Arresting Officer (Class B Misdemeanor).

81. In support of the charges, the officers included demonstrably false statements in their police report.

11

    i.    Officer Butler wrote: "Sheri swung at an Officer" and "threw out a closed fist at Officer Wood causing Officer Wood to have to move out of the way to avoid being hit".

    ii.    Officer Taylor wrote: "I observed through my peripheral vision Sheri raised a closed fist quickly and towards Officer Wood".

    iii.    Officer Wood wrote: "While I was standing with my foot in the doorway, [Sheri] brought her hand up in a balled fist and swung her first toward my face in a straight jab motion… The hit did not connect with my face as I stuck my hand up and pulled my face away to block her."

82. The State of Utah brought all five charges against Sheri on September 28, 2022.

83. The State of Utah relied on the officers' false statements when filing the charges.

84. Sheri hired counsel at her expense to defend against the criminal charges.

85. On February 24th, 2023, the State dismissed all charges after the prosecutor reviewed video of the incident.

86. Sheri served a Notice of Claim on West Jordan via email on July 25th, 2023.

87. Sheri subsequently served a copy of the Notice by mail.

88. After requesting several extensions, West Jordan elected not to respond to the Notice of Claim. She had hoped to resolve the case but is now forced to file suit, revealing the very sensitive facts to the public, so she can get justice for the officers' actions.

## FIRST CAUSE OF ACTION

*42 U.S.C. 1983 Violation due to Unlawful Entry, Unlawful Search, Unlawful Detention, Unlawful Arrest, Unlawful Use of Force*
*Against Officer Nolan Butler, Officer Sherri Wright, Officer E Taylor, Officer Ericka Wood, and Officer Nicholas Dailami*

63. Plaintiff adopts by reference all preceding paragraphs.

64. The Fourth Amendment protects against unlawful searches and seizures.

65. Sheri had the same Fourth Amendment rights to her hotel room as she does in her home.

66. Defendant Officers did not have a warrant to search or arrest Sheri.

67. Defendant Officers never had probable cause of any crime – therefore all use of force against Sheri was excessive in violation of the Fourth Amendment.

68. There were no exigent circumstances justifying a warrantless entry into her room where there was no evidence to suggest someone in Sheri's room needed immediate aid.

69. Officers Butler and Wood stuck their foot in the doorway without a warrant or exigent circumstances, thereby committed unlawful entry into Sheri's hotel room.

70. The Officers barged into Sheri's room over Sheri's protests and without a warrant or exigent circumstances, thereby committed unlawful entry into Sheri's hotel room.

71. Sheri did not throw a closed fist at Officer Wood. She merely pointed her finger in her direction.

13

72. The Officers handcuffed Sheri immediately upon entry into her room without a warrant or probable cause, thereby unlawfully detaining Sheri through the illegal use of force.

73. The Officers searched Sheri's room without a warrant or probable cause, thereby committed an unlawful search of Sheri's hotel room.

74.  Officer Wood and Taylor drummed up an assault charge against Sheri to justify their unconstitutional search and seizure.

75. The Officers subsequently arrested Sheri without probable cause of assault at the doorway or a warrant, thereby subjecting Sheri to an illegal arrest.

76. The Officers, including Nicholas Dailami, put Sheri in a WRAP body restraint, tied the restraint too tight, and ignored Sheri's complaints of pain and inability to breathe. This caused Sheri to pass out from lack of oxygen at least twice during the drive to the Salt Lake County Jail. This use of force was excessive as Sheri presented no meaningful threat to the Officers' safety.

77. The Officers booked Sheri into the Salt Lake County Jail without probable cause, thereby subjecting Sheri to unlawful detention.

78. Sheri suffered severe emotional distress, physical harm, and financial expenses (including bail and attorney costs) due to Defendants' constitutional violations.

14

## SECOND CAUSE OF ACTION

### *42 U.S.C. 1983 Violation due to Malicious Prosecution and Abuse of Process*
*Against Officer Nolan Butler, Officer Sherri Wright, Officer E Taylor, Officer Ericka Wood*

79. Plaintiff adopts by reference all preceding paragraphs.

80. The due process clause under the Fourteenth Amendment protects against the use of legal process for a wrongful purpose.

81. Defendant Officers concocted charges against Sheri to justify their unlawful entry, search, and seizure.

82. Defendant Officers charged Sheri with five counts: with three counts of Assault by Prisoner (3rd Degree Felony), one count Assault on Peace Officer (Class A Misdemeanor), and one count Interference with Arresting Officer (Class B Misdemeanor).

83. Defendants lacked probable cause for these charges. Sheri did not throw a punch at Officer Wood. Moreover, any incidental contact after Sheri was handcuffed was firmly within her right to defend an unlawful entry or attack on her person under Utah Code § 76-2-402 and § 76-2-405.

84. The Officers included false statements in their police report to induce the State to bring charges.

85. The State relied on these false statements and brought charges against Sheri.

15

86.  After prosecutors reviewed the body camera footage of the event, the State

    dismissed the charges.

87.  Sheri suffered severe emotional distress, physical harm, and financial expenses

    (including attorney fees) due to Defendants' constitutional violations.

## THIRD CAUSE OF ACTION

### *42 U.S.C. 1983 Violation due to Retaliation against Free Speech*
*Against Officer Nolan Butler, Officer Sherri Wright, Officer E Taylor,*
*Officer Ericka Wood, and Nicholas Dailami*

88.  Plaintiff adopts by reference all preceding paragraphs.

89.  This First Amendment protects free speech and bars government retaliation for

    disfavored free speech.

90.  Plaintiff's right to swear at officers who flagrantly violate the constitution and

    threaten a lawsuit is protected by the First Amendment.

91.  Officers Butler, Wright, Taylor, and Wood heard Plaintiff swear and threaten a

    lawsuit.

92.  When the Officers took Sheri outside, Officer Taylor met with Officer Dailami and

    told him about the swearing and threat of lawsuit.

93.  The Officers retaliated against Sheri for her free speech.

94.  Officer Butler, Wright, Taylor, and Wood concocted charges, arrested, and jailed

    Sheri in retaliation for Sheri's free speech.

95. All Officers, including Dailami, needlessly and recklessly subjected Sheri to the WRAP body restraint, not because Sheri presented a safety threat to the Officers, but to punish her for her speech.

96. The Officers intentionally or recklessly applied the WRAP device too tight to punish Sheri for her free speech, causing Sheri to pass out at least twice during the drive to the Salt Lake County Jail.

97. Sheri suffered severe emotional distress, physical harm, and financial expenses due to Defendants' constitutional violations.

**FOURTH CAUSE OF ACTION**
*42 U.S.C. 1983 – Supervisory Liability*
*Against Nicholas Dailami*

98. Plaintiff adopts by reference all preceding paragraphs.

99. Nicholas Dailami served as supervisor for the other named Defendants and arrived on scene after Sheri was removed from the hotel.

100. The Officers called Dailami after they completed the search of Sheri's room and realized the need to create a justification for their unlawful entry, search, and seizure.

101. Upon information and belief, the Officers discussed their predicament with Dailami over the radio and in person during the conversation where Officer Taylor tuned off the audio on his body camera.

17

102. As a supervising officer, Officer Dailami had the responsibility to prevent and correct constitutional violations.

103. Officer Dailami had information to objectively recognize the ongoing constitutional violations.

104. Officer Dailami refused to fulfill this role and instead allowed the Officers to continue their false arrest and unlawful use of force against Sheri.

105. Officer Dailami even assisted in the use of force, authorizing and assisting in subjecting Sheri to the WRAP body restraint.

106. Officer Dailami's failures as a supervisor allowed Sheri to suffer additional and illegal use of force, detention, and prosecution.

## FIFTH CAUSE OF ACTION

***Violation of Article I, Sections 7 and 14 of the Utah State Constitution due to Unlawful Entry, Unlawful Search, Unlawful Detention, Unlawful Arrest, Unlawful Use of Force, Malicious Prosecution, and Abuse of Process***
*Against Officer Nolan Butler, Officer Sherri Wright, Officer E Taylor, Officer Ericka Wood, and Officer Nicholas Dailami*

107. Plaintiff adopts by reference all preceding paragraphs.

108. Article I, Section 7 of the Utah State Constitution provides: "No person shall be deprived of life, liberty or property, without due process of law."

109. Article I, Section 14 of the Utah State Constitution provides "[t]he right of the people to be secure in their homes, houses, papers and effects against unreasonable searches and seizures shall not be violated".

110. Defendant Officers did not have a warrant to search or arrest Sheri.

111. Defendant Officers never had probable cause of any crime – therefore all use of force against Sheri was excessive in violation of the Fourth Amendment.

112. There were no exigent circumstances justifying a warrantless entry into her room where there was no evidence to suggest someone in Sheri's room needed immediate aid.

113. Officers Butler and Wood stuck their foot in the doorway without a warrant or exigent circumstances, thereby committed unlawful entry into Sheri's hotel room.

114. The Officers barged into Sheri's room over Sheri's protests without a warrant or exigent circumstances, thereby committed unlawful entry into Sheri's hotel room.

115. Sheri did not throw a closed fist at Officer Wood. She merely pointed her finger in her direction.

116. The Officers handcuffed Sheri immediately upon entry into her room without a warrant or probable cause, thereby unlawfully detaining Sheri through the unlawful use of force.

117. The Officers searched Sheri's room without a warrant or probable cause, thereby committed an unlawful search of Sheri's hotel room.

19

118.  Officer Wood and Taylor drummed up an assault charge against Sheri to justify
their unconstitutional search and seizure.

119. The Officers subsequently arrested Sheri without probable cause of assault at the
doorway or a warrant, thereby subjecting Sheri to an illegal arrest.

120. The Officers, including Nicholas Dailami, put Sheri in a WRAP body restraint, tied
the restraint too tight, and ignored Sheri's complaints of pain and inability to
breathe. This caused Sheri to pass out from lack of oxygen at least twice during the
drive to the Salt Lake County Jail. This use of force was excessive as Sheri
presented no meaningful threat to the Officers' safety.

121. The Officers booked Sheri into the Salt Lake County Jail without probable cause,
thereby subjecting Sheri to unlawful detention.

122. Defendant Officers concocted charges against Sheri to justify their unlawful entry,
search, and seizure.

123. Defendants lacked probable cause for these charges.

124. The Officers included false statements in their police report to induce the State to
bring charges.

125. The State relied on these false statements and brought charges against Sheri.

126. After prosecutors reviewed the body camera footage of the event, the State
dismissed the charges.

127. Sheri suffered severe emotional distress, physical harm, and financial expenses (including bail costs and attorneys fees) due to Defendants' constitutional violations.

### SIXTH CAUSE OF ACTION
***Violation of Article I, Section 9 of the Utah State Constitution***
***due to Unnecessary Rigor against Sheri***
*Against Officer Nolan Butler, Officer Sherri Wright, Officer E Taylor,*
*Officer Ericka Wood, and Officer Nicholas Dailami*

128. Plaintiff adopts by reference all preceding paragraphs.

129. Article I, Section 9 of the Utah Constitution bars "needlessly harsh, degrading, or dehumanizing treatment of prisoners".

130. The Officers led Sheri out of her room with no underwear or pants (though covered with a bedsheet) and onto the grass outside the hotel.

131. The Officers subjected Sheri to the WRAP restraint even though she did not present a safety risk to the officers.

132. The Officers forced Sheri into the WRAP restraint outside in public view. As part of the process, Sheri had to lay face down (naked butt in the air) onto the restraint. The Officers applied the restraint too tight and caused Sheri pain and difficulty breathing.

133. Despite adjustments, the WRAP restraint remained too tight and caused Sheri to pass out twice during the drive to the Salt Lake County jail.

134. At the Salt Lake County Jail, the Officers continued to needlessly keep Sheri in the WRAP restraint until she was ready for processing.

135. These actions constitute "unnecessary rigor".

21

136. Sheri suffered severe emotional distress, physical harm, and financial expense due to Defendants' constitutional violations.

## SEVENTH CAUSE OF ACTION
### State Constitutional Violations – Supervisory Liability
### Against Nicholas Dailami

137. Plaintiff adopts by reference all preceding paragraphs.

138. Nicholas Dailami served as supervisor for the other named Defendants and arrived on scene after Sheri was removed from the hotel.

139. The Officers called Dailami after they completed the search of Sheri's room and realized the need to create a justification for their unlawful entry, search, and seizure.

140. Upon information and belief, the Officers discussed their predicament with Dailami over the radio and in person during the conversation where Officer Taylor tuned off the audio on his body camera.

141. As a supervising officer, Officer Dailami had the responsibility to prevent and correct constitutional violations.

142. Officer Dailami had information to objectively recognize the ongoing constitutional violations.

143. Officer Dailami refused to fulfill this role and instead allowed the Officers to continue their false arrest and unlawful use of force against Sheri.

144. Officer Dailami even assisted in the use of force, authorizing and assisting in subjecting Sheri to the WRAP body restraint.

145. Officer Dailami's failures as a supervisor allowed Sheri to suffer additional and illegal use of force, detention, and prosecution.

### EIGHTH CAUSE OF ACTION
*Monell Liability*
*State and Federal Constitutional Violations*
*Against West Jordan City*

146. Plaintiff adopts by reference all preceding paragraphs.

147. West Jordan has failed to train its officers regarding the constitutional limitations on their ability to enter, detain, and search citizens.

148. West Jordan has been the subject of numerous lawsuits regarding similar constitutional violations by its police officers. See *Peterson v. Adams*, No. 216CV00775RJSPMW, 2018 WL 4627089, at *14 (D. Utah Sept. 7, 2018) (alleging excessive force, malicious prosecution, and false arrest); *Jensen v. W. Jordan City*, No. 2:12-CV-736-DAK, 2016 WL 4256946, at *10 (D. Utah Aug. 11, 2016), aff'd, 968 F.3d 1187 (10th Cir. 2020) (malicious prosecution); *Warnick v. Briggs*, No. 2:04CV0360DAK, 2005 WL 1566669, at *4 (D. Utah July 1, 2005) (alleging illegal search, arrest, and seizure).

149. West Jordan officers have a history of violating the rights of citizens who elect not to assist a police officer in an investigation. In *State v. Tripp*, for example, the Utah

Court of Appeals found a West Jordan officer violated the Fourth Amendment by arresting a witness and performing a warrantless blood draw. 2010 UT 9, ¶ 3, 227 P.3d 1251, 1254. The involved officer is still employed by West Jordan police.

150. Moreover, the obvious violations (stepping into the doorway to prevent a naked party from getting dressed, barging into her room without a warrant, handcuffing her without cause, conducting an illegal search to flesh out a noise complaint) demonstrate these officers have not received basic training into the constitutional restraints on government.

151. Additionally, upon information and belief, West Jordan has an informal practice of covering up for constitutional failures by fellow officers.

152. Officer Dailami's inaction in the face of clear and obvious constitutional violations evinces a custom of indifference to people's rights and a determination to protect officers from accountability.

153. The Officers' actions in this case, including turning off audio recording during conversations between officers (a violation of West Jordan Police policy) and the failure by an officer to object to the ridiculous claim that Sheri assaulted Officer Wood, demonstrates a willingness to protect fellow officers over the need to follow rules and law.

154. The Officers' inclusion of false statements in their police reports failures evinces a practice in covering up constitutional violations.

24

155. Finally, West Jordan has not trained its officers on proper use of the WRAP restraint.

156. The WRAP restraint is intended to be used for criminals who present a safety threat to officers or to themselves.

157. The manufacturer of the device claims proper use will allow officers to immobilize a person without restricting their breathing.

158. However, improper use of the WRAP device has resulted in people suffering cardiac arrest or asphyxia.

159. On information and belief, West Jordan officers misuse the WRAP device, using it on persons who do not present safety risks to officers and improperly applying the device resulting in significant health risks.

160. West Jordan's failure to train and informal policies and practices allowed Sheri's constitutional rights to be violated.

## <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff requests this court enter judgment against Defendants, and each of them and provide the following relief:

    a.  Compensatory and special damages in whatever amount, exclusive of costs and interest, that Plaintiff is found to be entitled;

    b.  Punitive/exemplary damages against Defendants in whatever amount, exclusive of costs and interest, that Plaintiff is found to be entitled;

c.  For pre and post judgment interest and costs as allowed by law;

d.  For attorney fees, pursuant to 42 U.S.C. § 1988;

e.  Such other and further relief as the court deems appropriate.

Dated this December 8, 2023.

/s/      Daniel Baczynski
Attorney for Plaintiff

26

Daniel M. Baczynski, Bar No. 15530
BACZYNSKI LAW, PLLC
136 W, 12300 S, Ste B
Draper, UT 84020
Phone: (708) 715-2234
*dan@bskilaw.com*

Roger A. Kraft, Bar No. 9932
7660 S. Holden St.
Midvale, UT. 84047
801-255-8550
roger@rogerkraftlaw.com
Attorneys for Plaintiff

---

## THIRD JUDICIAL DISTRICT COURT
## STATE OF UTAH, SLC DEPARTMENT

| | |
|---|---|
| Sheri Meyer,<br><br>     Plaintiff,<br><br>vs.<br><br>West Jordan Officers Nolan Butler, Ericka Wood, Sherri Wright, E. Taylor, Nicholas Dalami, and West Jordan City<br><br>     Defendants. | **ACCEPTANCE OF SERVICE**<br><br>**(Utah Rule of Civil Procedure 4(d)(3))**<br><br>Case No:  230909285<br><br>Judge:   GIBSON |

1. I received and accept service of the complaint in my capacity as City Attorney to the City of West Jordan and on behalf of all Defendants in this matter.

2. Defendants understand that service is effective on the date I sign this document.

3. Defendants are aware they can still respond to the complaint or petition in this case.

4. Defendants understand that they must update the court if my contact information changes. If they don't, their rights in this case could be affected without their knowing.

1

Dated this: <u>January 17, 2024</u>

Signature: _____

Printed Name: <u>Paul Dodd</u>